Judge: Lynch
Chapter: 7
Hearing Location: Vancouver Federal Bldg
Hearing Date: April 2, 2019
Hearing Time: 9:00 AM
Reply Date: March 28, 2019

UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

TACOMA DIVISION

In re

**NELSON M MELO and SANDRA K. MELO**

Debtors.

Case No. 17-43644-BDL

**DECLARATION OF JAMES HINNENDAEL**

I, James Hinnendael, hereby declare:

1.     I am the Executive Vice President and Chief Financial Officer for Claimant Marten Transport Ltd. ("Marten"). In my position as EVP and CFO, I work day to day with Marten's business. I further worked directly in connection with the construction project in which TreCore Construction Management, LLC ("TreCore") was the contractor for the Marten Trucking Parking Lot Repair Project ("Project"). Through this, I have personal knowledge of the facts stated in this declaration and if sworn as a witness, could and would competently testify truthfully to those facts.

2.     A complete and accurate copy of the December 8, 2016 contract between Marten and TreCore for the Project is attached hereto as Exhibit A.

3.     I am informed and believe that Nelson Melo ("Melo") made multiple intentionally false representations to Marten regarding its payments to subcontractors, its intent to make further payments to subcontractors, and TreCore LLC's financial condition. Some

DECLARATION OF JAMES HINNENDAEL – Page 1

LARKINS VACURA KAYSER LLP
121 SW Morrison St., Suite 700
Portland, Oregon 97204
(503) 222-4424

specific representations are detailed below. Marten is prepared to present further evidence of Melo's misrepresentations at the hearing on Marten's claim.

4. In an email dated May 12, 2017, Bobbi Foth of TreCore sent an email to Becky Schwinefus of Marten stating that the Project was "100% complete." Nelson Melo ("Melo") is indicated as cc on this email. A complete and accurate copy of this email is attached hereto as Exhibit B. Contrary to the claim made in this email, the job was not "100% complete," for TreCore had not made payment to Granite, which was an express contractual requirement for completion.

5. Even though Marten had paid TreCore in full for its work on the Project, because TreCore had not paid its subcontractor Granite, Granite recorded a mechanics lien on the Project property, and pursued Marten for payment. Marten attempted to obtain payment from TreCore, through communications with Nelson Melo and other TreCore principals.

6. Melo made repeated assurances to Marten that payment would be made to Granite, and that TreCore was attempting to reorganize its finances through a potential merger. Ultimately, Marten had no alternative but to resolve the matter by paying Granite the amount that it was owed by TreCore. As a result, Marten paid twice for work that TreCore's subcontractor Granite performed.

7. TreCore principals, including Nelson Melo, made numerous assertions regarding past and promised payments. These representations included a telephone conversation in mid-June, 2017 and in an email dated June 23, 2017 to Marten's attorney Donald Bradley (on which Nelson Melo was copied). A complete and accurate copy of this email is attached hereto as Exhibit C.

**DECLARATION OF JAMES HINNENDAEL** – Page 2

LARKINS VACURA KAYSER LLP
121 SW Morrison St., Suite 700
Portland, Oregon 97204
(503) 222-4424

8.     I am informed and believe that these representations were knowingly false, for TreCore, Melo, and at least one other principal at TreCore shortly thereafter filed bankruptcy petitions.

9.     On August 3, 2017, Marten filed a complaint in the United States District Court for the District of Oregon.  A complete and accurate copy of that complaint is attached hereto as Exhibit D.  The case was titled *Marten Transport Ltd. v. TreCore Construction Management LLC, Nelson Melo, et al.*, United States District Court, District of Oregon, Case Number 3:17-cv-01211-YY.

10.    On August 15, 2017, TreCore filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington, Case Number 17-43069 BDL.

11.    On September 28, 2017, Nelson Melo and Sandra Melo filed the instant bankruptcy petition.

12.    On September 4, 2018, the U.S. Trustee filed an adversary proceeding (Case Number 18-04055) in this bankruptcy against Morgan Melo, the debtor's daughter, alleging that significant assets had been fraudulently transferred in order to avoid claims by creditors in the bankruptcy.

13.    I am informed and believe that when TreCore made its payment applications and asserted that it had paid and further intended to pay its subcontractors with payments it received, including Granite, that Mr. Melo and TreCore had not made prior payments to, and had no intention of making further payments to Granite or any other subcontractor.  This belief is based on the specific representations referenced above, as well as additional representations that Marten will be prepared to discuss at the hearing on its claim.

**DECLARATION OF JAMES HINNENDAEL** – Page 3

LARKINS VACURA KAYSER LLP
121 SW Morrison St., Suite 700
Portland, Oregon  97204
(503) 222-4424

I declare under penalty of perjury pursuant to the laws of the United States of America and the State of Wisconsin that the foregoing is true and correct. Executed this 26th day of March, 2019, at Mondovi, Wisconsin.

James Hinnendael

**DECLARATION OF JAMES HINNENDAEL** – Page 4

LARKINS VACURA KAYSER LLP
121 SW Morrison St., Suite 700
Portland, Oregon 97204
(503) 222-4424

# EXHIBIT A

*Trecore Construction Management*

## ARTICLE 1   THE CONTRACT DOCUMENTS .

1.1 The Contractor shall complete the Work described in the Contract Documents for the Project. The Contract Documents consist of

.1      this Agreement signed by the Owner and Contractor;

.2      the drawings and specifications prepared by the Contractor, dated October 3, 2016, and enumerated as follows:

Drawings:

| Number | Title | Date |
|--------|-------|------|
| 1 of 1 | Google Earth Sketch | 10/3/16 |
| 1 of 1 | Phasing Layout | 10/3/16 |

## ARTICLE 2   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

The number of calendar days available to the Contractor to substantially complete the Work is the Contract Time. The date of commencement of the Work shall be on or about April 3, 2017 unless otherwise indicated below.

Phase #1 - West Parking Area Approx 85,000 SF (Based upon 30 day work schedule) - Full Access Required
Phase #2 - East Parking Area Approx 47,000 SF (Based upon 30 day work schedule) - Full Access Required
Calendar subject to adjustment as provided in Article 9 and Article 10.

## ARTICLE 3   CONTRACT SUM

3.1 Subject to additions and deductions in accordance with Article 9, the Contract Sum is:  **Seven Hundred Seventy Thousand Two Hundred Seventy-One Dollars and Seventeen cents** ($770,271.17).

3.2 For purposes of payment, the Contract Sum included the following values related to portions of the Work:

See ROM Proposal TRE #639

3.3 Allowances included in the Contract Sum, if any, are as follows:

Item  SDC FEES TO CITY OF WILSONVILLE ALLOWANCE                    0 . *

3.4 The Contract Sum shall include all items and services necessary for the Work.

*debora @ trecoreconstruction.com*

```
520 , 852 . 13*
249 , 419 . 04*
770 , 271 . 17*

           0 . *

770 , 271 . 17×
        0 . 25=
192 , 567 . 79*  ——— 8000 .
                   121300 . 3000
```

*send 1/3*
*deposit 1/4*

Exhibit A

## ARTICLE 4   PAYMENT

4.1 Based on Contractor's Applications for Payment, the Owner shall pay the Contractor, in accordance with Article 11, as follows:

*25% Down Payment*
Monthly progress billings thereafter per industry standard to be paid Net 30 or less from time of invoice

4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate below, or in the absence thereof, at the legal rate prevailing at the place of the Project.

12%

## ARTICLE 5   INSURANCE

5.1 The Contractor shall provide the Contractor's general liability and other insurance as follows:

| Type of Insurance | Limit of Liability ($0.00) |
|---|---|
| General Liability | $1,000,000 each occurrence |
| Automobile Liability | $1,000,000 combined single limit |
| Workers Compensation | $1,000,000 EL each accident |

5.2 The Owner shall provide property insurance to cover the value of the Owner's property, including any Work provided under this Agreement. The Contractor is entitled to receive an increase in the Contract Sum equal to the insurance proceeds related to a loss for damage to the Work covered by the Owner's property insurance.

5.3 The Contractor shall obtain an endorsement to its general liability insurance policy to cover the Contractor's obligations under Section 8.12.

5.4 Each party shall provide certificates of insurance showing their respective coverages prior to commencement of the Work.

5.5 Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against (1) each other and any of their subcontractors, suppliers, agents and employees, each of the other; and (2) consultants and any of their agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.

## ARTICLE 6   GENERAL PROVISIONS

6.1 The Contract
The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreement, either written or oral. The Contract may be amended or modified only by a written modification in accordance with Article 10.

6.2 The Work
The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided, or to be provided, by the Contractor to fulfill the Contractor's obligations.

6.3 Intent
The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by owner shall be as binding as if required by all.

Exhibit A

**6.4 Ownership and Use of Drawings, Specifications and Other Documents**
Documents are prepared for use solely with respect to this Project. The Contractor, subcontractors, sub-subcontractors, and material or equipment suppliers are authorized to use and reproduce the instruments of service solely and exclusively for execution of the Work. The instruments of service may not be used for other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Contractor.

**ARTICLE 7    OWNER**
**7.1 Information and Services Required of the Owner**
**7.1.1** If the requested by the Contractor, the Owner shall furnish all necessary surveys and a legal description of the site.

**7.1.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, the Owner shall obtain and pay for other necessary approvals, easements, assessments and charges.

**7.2 Owner's Right to Stop the Work**
If the Contractor fails to correct Work which is not in accordance with the Contract Documents, the Owner may direct the Contractor in writing to stop the Work until the correction is made.

**7.3 Owner's Right to Carry Out the Work**
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies, correct such deficiencies. In such case, the Contract Sum shall be adjusted to deduct the cost of correction from payments due the Contractor.

**ARTICLE 8    CONTRACTOR**
**8.1 Review of Contract Documents and Field Conditions by Contractor**
**8.1.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**8.1.2** The Contractor shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner. Before commencing activities, the Contractor shall (1) take field measurements and verify field conditions; and (2) carefully compare this and other information known to the Contractor with the Contract Documents.

**8.2 Contractor's Construction Schedule**
The Contractor, shall prepare and submit for the Owner's information a Contractor's construction schedule for the Work.

**8.3 Supervision and Construction Procedures**
**8.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portion of the Work.

**8.4 Labor and Materials**
**8.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials equipment, tools, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work.

**8.4.2** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract Work. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

**8.5 Warranty**
The Contractor warrants to the Owner that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects

Exhibit A

not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

**8.6 Taxes**
The Contractor shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

**8.7 Permits, Fees and Notices**
**8.7.1** All Required Permits responsibility of the Contractor.  The Contractor will coordinate inspections necessary for proper execution and completion of the Work.

**8.7.2** The Contractor shall comply with and give notices required by agencies having jurisdiction over the Work. If the Contractor performs Work knowing it to be contrary to applicable laws, statues, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs. The Contractor shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

**8.8 Submittals**
The Contractor shall promptly review, approve in writing and submit to the Owner Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

**8.9 Use of Site**
The Contractor shall confine operations at the site to areas permitted by law, ordinances permits, the Contract Documents and the Owner.

**8.10 Cutting and Patching**
The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**8.11 Cleaning Up**
The Contractor shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work. At the completion of the Work, the Contractor shall remove its tools, construction equipment, machinery and surplus material; and shall properly dispose of waste materials.

**8.12 Indemnification**
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, consultants and agents and employees of any from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts the may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

**ARTICLE 09    CHANGES IN THE WORK**
**9.1** The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor can not agree to a change in the Contract Sum, the owner shall pay the Contractor its actual cost plus reasonable overhead and profit.

**9.2** If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

Exhibit A

ARTICLE 10    TIME

**10.1** Time limits stated in the Contract Documents are of the essence of the Contract.
 Project Commencement may be accomplished earlier than noted above by both Contractor / Owner revision approval.
**10.2** If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, the Contract Time shall be subject to equitable adjustment.

ARTICLE 11    PAYMENTS AND COMPLETION

**11.1 Contract Sum**
The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**11.2 Applications for Payment**
**11.2.1** The Contractor shall submit to the Owner an itemized Application for Payment for Work completed in accordance with the values stated in the Agreement. Such Application shall be supported by data substantiating the Contractor's right to payment as the Owner may reasonably require. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.

**11.2.2**
The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment, all Work for which Certificated for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

**11.3 Progress Payments**
**11.3.1** The Owner shall make payment in the manner provided in the Contract Documents.

**11.3.2** The Contractor shall promptly pay each subcontractor and supplier, upon receipt of payment from the Owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders.

**11.3.3** The Owner shall not have responsibility for payments to a subcontractor or supplier.

**11.3.4** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the requirements of the Contract Documents.

**11.4 Substantial Completion**
**11.4.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work or its intended use.

ARTICLE 12    PROTECTION OF PERSONS AND PROPERTY
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The Contractor shall take reasonably precautions to prevent damage, injury or loss to employees on the Work, the Work and materials and equipment to be incorporated therein, and other property at the site or adjacent thereto. The Contractor shall promptly remedy damage and loss to property caused in whole or in part by the Contractor, or by anyone for whose acts the Contractor may be liable.

ARTICLE 13    CORRECTION OF WORK
In addition to the Contractor's other obligations including warranties under the Contract, the Contractor shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

**ARTICLE 14    MISCELLANEOUS PROVISIONS**
**14.1 Assignment of Contract**
Neither party to the Contract shall assign the Contract as a whole without written consent of the other.

**14.2 Tests and Inspections**
**14.2.1** At the appropriate times, the Contractor shall arrange tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

**14.2.2** The Contractor shall bear cost of tests, inspections or approvals that do not become requirements until after the Contract is executed. Said costs applicable only to current project, and not Contractor responsibility until post Contract execution.
**14.3 Governing Law**
The Contract shall be governed by the law of the place where the Project is located.

This Agreement entered into as of the day and year first written above.

OWNER *(Signature)*                       OWNER *(Signature)*

Steve Hale
*(Printed name)*                          *(Printed name)*

Dec 7 2016
*(Date)*                            *(Date)*

**TréCore Construction Management, LLC**      **TréCore Construction Management, LLC**
**(Signature)**                              **(Signature)**

Nelson M Melo, President             Monté Pershall, Sr. Vice President

12/8/16                           12/8/16
*(Date)*                             *(Date)*

Exhibit A

PROPOSAL TRE#639
MARTEN TRUCKING
PARKING LOT REPAIRS



4510 NE 68th Drive, Suite 104
Vancouver, WA 98661
360-574-7661 Office
360-984-6637 Fax
trecoreconstruction.com

## PROPOSAL TRE#639

### MARTEN TRUCKING PARKING LOT REPAIRS

| | |
|---|---|
| Client: | MARTEN TRUCKING LTD |
| Attention: | WAYNE KAWSKI |
| Project: | PROPOSAL TRE#639 |
| Location: | WILSONVILLE, OREGON |

| Proposed Scope of Work | PROPOSAL BASED UPON A REGULAR WORKING HOUR SCHEDULE | 10/5/2016 |
|---|---|---|

**PHASE #1 (WEST PARKING AREA APPROX. 85,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 56,000 SF OF FAILED AC / BASE.
* BACKFILL / COMPACT SUBGRADE AT NW CORNER OF PROPERTY TO OBTAIN ADDITIONAL PAVING AREA
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 300x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 29,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 85,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

**PHASE #1 FUEL STATION ADDER OPTION:**
* RELOCATE EXISTING FUEL STATION APPROX. 80' WESTERLY.  (SEE ATTACHED SKETCH)
* RELOCATION TO INCLUDE:
1. RELOCATE ALL PLUMBING / ELECTRICAL AS REQUIRED FOR RELOCATED FUEL TANK / POLY TANK / STATION
2. NEW APPROX 90x60x12" THICK STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG
3. NEW TRENCH DRAINS WITHIN NEW SOG - UNDERGROUND PLUMBING TO TRAVEL TO EXISTING OIL/WATER SEPERATOR
4. NEW APPROX 90'x60'x16' CLEAR HEIGHT CANOPY OVER RELOCATED FUEL STATION
5. NEW LED LIGHTING BELOW NEW CANOPY
6. RELOCATE FUEL TANK ONTO NEW STRUCTURALLY REINFORCED FOUNDATION
7. RELOCATE POLY TANK ONTO NEW STRUCTURALLY REINFORCED FOUNDATION
8. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF FUELING STATION / FUEL TANK / POLY TANK
9. CLEAN / PREP / PAINT EXISTING FUEL TANK
10. CLEAN / PREP / PAINT NEW CANOPY, BOLLARDS AND ALL NEW COMPONENTS

**PHASE #1 SECURITY STATION ADDER OPTION:**
* PROVIDE / INSTALL NEW SECURITY STATION AT WESTERLY ENTRANCE
* SECURITY STATION TO INCLUDE:
1. SUPPLY / INSTALL ALL PLUMBING / ELECTRICAL AS REQUIRED FOR NEW SECURITY STATION / SECURITY GATE
2. NEW STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG AT NEW SECURITY STATION LOCATION
3. SUPPLY / INSTALL NEW GAURD STATION SHACK
4. SUPPLY / INSTALL NEW RELOCATED SECURITY GATE ENTRANCE (SEE ATTACHED SKETCH)
5. NEW GATE OPERATORS / CONTROLS
6. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF SECURITY STATION AND OPERATOR PROTECTION
9. CLEAN / PREP / PAINT

**PHASE #2 (EAST PARKING AREA APPROX. 47,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 20,000 SF OF FAILED AC / BASE.
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 220'x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 27,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 47,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

*PROUDLY SERVING:  WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING*

Exhibit A

*PROPOSAL TRE#639*
*MARTEN TRUCKING*
*PARKING LOT REPAIRS*

BELOW LINE ITEMS INCLUDES ALL APPLICABLE GENERAL CONDITIONS / PROJECT MANAGEMENT / ESTIMATING / ADMIN / SAFETY / SITE SUPERVISION / EQUIPMENT / MATERIAL / LABOR / TAXES / INSURANCE / ENGINEERING / ARCHITECTURE / PERMITTING (SDC FEES TO CITY OF WILSONVILLE ALLOWANCE WITHIN)/ SPECIAL INSPECTIONS

| | |
|---|---|
| PHASE #1 – WEST PARKING AREA APPROX 85,000 SF (BASED UPON 30 DAY WORK SCHEDULE) | $ 520,852.13 |
| PHASE #1 – FUEL STATION ADDER OPTION (BASED UPON AN ADDITIONAL 15 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 – PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 45 WORK DAYS) | $ 315,160.11 |
| PHASE #1 –SECURITY STATION ADDER OPTION (BASED UPON 30 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 – PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 60 WORK DAYS) | 280,226.00 |
| PHASE #2 – EAST PARKING AREA APPROX 47,000 SF (BASED UPON 20 DAY WORK SCHEDULE) | $ 249,419.04 |
| TOTAL PROPOSED PROJECT COSTS | $ 1,365,657.28 |

TréCore Construction Management proposal promoted by:

| | | |
|---|---|---|
| **Nelson M. Melo** | **Monte' R. Pershall** | **Craig H. Shartner** |
| President | Sr. Vice President | Sr. Project Manager / Business Dev. |

**Exclusions:**

Any Specifics Not Noted Within
Special Governmental, Enforcement Agency, or Administrative filings, or notifications. GC liability and or responsibility for unknown existing environmental, storm water, structural soils conditions and or substrate contamination. Costs of special and or specific excavation in handling or removal of existing materials is not assumed within this scope of work. TréCore Construction Management LLC will not assume unexpected potential environmental fines/citations regarding current and/or site soils and or structural conditions. Scope excludes unexpected subgrade and or structural SOG and or sanitary main line undermining existing compromised conditions.

**Included:**

All work to be completed in a professional workman like manner to a minimum of industry standards. Any alteration or deviation from the above specifications impacting schedule and/or costs impacts will be executed only upon (Senior directive) and/or approval by client(s) and appropriate authorized TreCore Senior management's representation. All scheduling deadlines are contingent to a provided safe and accessible jobsite environment with acceptable working conditions. Factors beyond GC's direct control not limited to weather and/or unforeseen conditions that may impact schedule, milestones and or final delivery date(s) along with overall preapproved budgeting. All work performed unless specifically noted is currently budgeted to be executed during normal industry daylight and weekly hours. Proposed budget within may be market adjusted post 30 days of receipt and or date noted within.

**Disclaimer**

The General Contractor makes every reasonable effort to determine existing conditions prior to providing budgeting applicable to above scope of work proposed. However, in the event that unforeseen conditions are discovered that may negatively impact proposed budgeting within, including but not limited to unexpected: buried debris, stone ledger, toxic waste, garbage, structural rubble, historical artifacts, etc. The General Contractor and or its Assignees, Representatives and or Trades and Vendors will notify our Client(s) and assumably request for a Change Order to be executed. In the event in which the progress and/or project schedule milestones of the project is compromised due to unforeseen conditions, the General Contractor and or its Assignees will immediately notify (in writing) the Client(s) and assumably request adjustment of overall project schedule and/or budgeting cost impacts and or job totals.

*PROUDLY SERVING: WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING*

Exhibit A



*Standard Form of Agreement Between Owner and Contractor*

AGREEMENT made as of the 7th day of November in the year 2016.

BETWEEN the Owner:
*(Name, legal status, address and other information)*

*Marten Transport, LTD.*
*29605 SW Kinsman Rd*
*Wilsonville OR 97070*


and the Contractor:
*(Name, legal status, address and other information)*

*TréCore Construction Management, LLC*
*4510 NE 68th Dr., Ste #104*
*Vancouver, WA 98661*


for the following Project:
*(Name, location and detailed description)*

*Marten Transport, LTD.*
*29605 SW Kinsman Rd*
*Wilsonville OR 97070*


The Owner and Contractor agree as follows.

Exhibit A

TABLE OF ARTICLES

1    THE CONTRACT DOCUMENTS

2    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION DATE

3    CONTRACT SUM

4    PAYMENT

5    INSURANCE

6    GENERAL PROVISIONS

7    OWNER

8    CONTRACTOR

09    CHANGES IN THE WORK

10    TIME

11    PAYMENTS AND COMPLETION

12    PROTECTION OF PERSONS AND PROPERTY

13    CORRECTION OF WORK

14    MISCELLANEOUS PROVISIONS

Exhibit A

# EXHIBIT B

Hi Becky

I hope you enjoyed your vacation.  Always so nice to relax.
Question- Can we expect payment on this invoice this week?  It would be most appreciative if so.

Thanks


Bobbi Foth
Financial Administrator
Bobbi@trecoreconstruction.com
office: 360.574.7661 x 214
Direct line: 360.719-2707
trecoreconstruction.com
4510 NE 68th Drive, Suite 104
Vancouver, WA 98661

**From:** Becky Schwinefus [mailto:Becky.Schwinefus@marten.com]
**Sent:** Monday, May 22, 2017 10:56 AM
**To:** Bobbi Foth <bobbi@trecoreconstruction.com>
**Cc:** Monte Pershall <monte@trecoreconstruction.com>; Nelson Melo <nelson@trecoreconstruction.com>; Chris Horne
<chris@trecoreconstruction.com>; Wayne Kawski <Wayne.Kawski@marten.com>
**Subject:** RE: Final billing on MT-639

Wayne,
I was out of the office since receiving this invoice.  Please approve.

*Thank you!!*
*Becky Schwinefus*
Senior Fixed Asset Accountant | **Marten Transport, LTD.** |129 Marten St. | Mondovi, Wisconsin 54755 - *www.marten.com*
office: 715-926-4216 ext. 2951 |  Fax: 715-926-5693| email: *bcs@marten.com*



**From:** Bobbi Foth [mailto:bobbi@trecoreconstruction.com]
**Sent:** Friday, May 12, 2017 4:07 PM
**To:** Becky Schwinefus
**Cc:** Monte Pershall; Nelson Melo; Chris Horne
**Subject:** Final billing on MT-639

Hello Becky-
Thank you for the eft payment on invoice #2 today. Your expediency on the processing and payment was very much
appreciated.

Please find, attached,  the final billing invoice on this job as it is 100% complete. .  I have attached our EFT information
for your convenience and hope to see this  payment into our account

2

by next week.

Thank you very much and again, thank you for your speedy processing.


Bobbi Foth
Financial Administrator
Bobbi@trecoreconstruction.com
office: 360.574.7661 x 214
Direct line: 360.719-2707
trecoreconstruction.com
4510 NE 68th Drive, Suite 104
Vancouver, WA 98661

# EXHIBIT C

| | |
|---|---|
| **From:** | Amanda Moore <Amanda@trecoreconstruction.com> |
| **Sent:** | Friday, June 23, 2017 8:42 PM |
| **To:** | Sonny Chavez; Bradley, Donald |
| **Cc:** | Nelson Melo |
| **Subject:** | Payment to Granite for Marten Transport project |

*Gentlemen,*

*TréCore Construction Management LLC is proactively working upon a strategic merger that will provide us the means to satisfy our vendor and trade commitments.*

*The last details are being settled and the documents have been submitted to legal counsel for final review. We respectfully ask that you permit us the opportunity to fulfill our commitment to Granite, as has been our intention all along, without further legal actions.*

*We are deeply saddened and embarrassed by the impact that our situation has had upon our reputation and relationship with our clients, subcontractors, and vendors.*

*Please reach out at your earliest opportunity to jointly develop the path for a mutually satisfactory resolution.*

Thank you,

*Amanda Moore*

Financial Administrator

amanda@trecoreconstruction.com

Direct: 360-952-4608

Office: 360-574-7661 Ext. 211

Fax: 360-984-6637

1

4510 NE 68th Drive, Suite 104

Vancouver, WA 98661

CONFIDENTIALITY NOTICE
This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Respectfully.

# EXHIBIT D

Christopher J. Kayser, OSB #984244
Larkins Vacura Kayser LLP
121 SW Morrison St Suite 700
Portland, OR  97204
Telephone:  503-542-3111
cjkayser@lvklaw.com
Attorney for Marten Transport, Ltd.

Donald Bradley (to be admitted *pro hac vice*)
D.Bradley@MPGLAW.com
William Bossen (to be admitted *pro hac vice*)
W.Bossen@MPGLAW.com
Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| Marten Transport, Ltd., a Delaware Corporation<br><br>                    Plaintiff,<br><br>        v.<br><br>Trecore Construction Management, LLC, a Washington Limited Liability Company, Nelson Melo, an individual, and Monte Pershall, an individual<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marten Transport, Ltd. ("Marten") hereby alleges:

### PARTIES, FEDERAL JURISDICTION, AND VENUE

      1.      Marten is a corporation, organized under the laws of the state of Delaware, with

its headquarters in Mondovi, Wisconsin.

      2.      Defendant TreCore Construction Management, LLC ("TreCore") is a Limited

Liability Company organized under the laws of the state of Washington, with its principal place

COMPLAINT                                                                                                    Page 1

of business in the state of Washington and doing business in the state of Oregon.

3.     Nelson Melo ("Melo") is the Chief Executive Officer and President of TreCore. His domicile is in the state of Washington.  Monte Pershall ("Pershall") is the Senior Vice President of TreCore.  His domicile is in the state of Washington.  TreCore, Melo, and Pershall are sometimes hereafter collectively referred to as "Defendants."

4.     As alleged in further detail below, the conduct of Defendants caused Marten to incur damages in an amount equal to or exceeding $629,223.  Accordingly, pursuant to 28 U.S.C. §1332, diversity jurisdiction is proper, as this lawsuit is between citizens of different states, and the amount in controversy exceeds $75,000.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

5.     Each Defendant at all times mentioned in this Complaint was an agent, principal, master, servant, employee, employer, partner, and/or joint venture of each of the other Defendants, and in doing the acts, things and/or omissions alleged in this Complaint, was acting within the course and scope of that agency, employment or representation, with the knowledge, consent, ratification, and approval of each of the other Defendants. Any allegation referring to more than one Defendant refers to all such Defendants, jointly and severally.

6.     Marten is informed and believes and thereon alleges that Melo and Pershall acted in such a way as to exercise control over all Defendants, and used TreCore as a mere shell, instrument, or conduit for themselves.  Marten is informed and believes and thereon alleges that Melo and Pershall act and operate through TreCore and that the purported separate legal existence of TreCore must be disregarded since Melo and Pershall have a unity of interest in TreCore, and that they used this entity for themselves.  Melo and Pershall treated TreCore as their alter ego, and are therefore liable for any conduct of TreCore.

COMPLAINT                                                                                          Page 2

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

### Against All Defendants

7.      On or about December 8, 2016, Marten and Defendants entered into a written Contract pursuant to which Defendants would construct a parking lot facility at Wilsonville, Oregon ("Project") and Marten would pay Defendants $770,271.17 for that work ("Contract"). A complete and accurate copy of the Contract is attached hereto as Exhibit A.

8.      Pursuant to Paragraph 11.3.2 of the Contract, Defendants were required to "promptly pay each subcontractor and supplier, upon receipt of payment from the owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders."

9.      Granite Construction ("Granite") was a subcontractor to Defendants under the Contract.  Marten is informed and believes that Glacier Northwest dba Calportland was a material supplier to Porter W. Yett Co., Inc., one of Defendants' subcontractors on the Project.

10.     Marten has paid Defendants in full for the work performed pursuant to the Contract, which payments included work performed by Defendants' subcontractors.

11.     Defendants have failed to pay certain subcontractors and suppliers for work performed on the project.  Defendants' subcontractor Granite Construction has not been paid. Marten is informed and believes and thereon alleges that additional subcontractors of Defendants have not been paid for work performed on the Project, including, but not limited to Porter W. Yett and Glacier Northwest dba Calportland.

12.     On or about July 7, 2017, Granite Construction recorded a mechanics lien in the amount of $629,223.50 against Project real property owned by Marten.

13.     Paragraph 11.2.2 of the Contract provides that the Defendants warrant that payments received from Marten shall "be free and clear of liens, claims, security interests or other encumbrances adverse to [Marten's] interests."

14.     Defendants' failure to pay their subcontractors and resulting recording of at least one mechanics lien against Marten's property constitute breaches of the Contract.  As a result of

COMPLAINT                                                Page 3

these breaches, Marten has been damaged in an amount according to proof.

## SECOND CAUSE OF ACTION – INDEMNITY

### Against All Defendants

15.     Marten incorporates by reference Paragraphs 1 through 14 above as if fully alleged here.

16.     If Marten is held liable and responsible to Granite for damages based on the mechanics' lien Granite filed and any subsequent foreclosure action, it will be solely due to the conduct of Defendants, and each of them, as herein alleged.  Therefore, Marten is entitled to be indemnified by Defendants, and each of them, should such liability arise.

17.     Marten is entitled to complete indemnification by Defendants, and each of them, for any sum or sums for which it may be adjudicated liable to Granite, with costs of defense, costs of suit, and reasonable attorney's fees incurred therefrom.

18.     Marten is incurring, and has incurred, attorney's fees, and other costs in connection with Granite's claims, the exact amount of which is unknown at this time.  When they have been ascertained, Marten will seek leave of court to amend this Complaint to set forth the true nature and amount of those costs and expenses.

## THIRD CAUSE OF ACTION – FRAUD

### Against All Defendants

19.     In or about December, 2016, Defendants, in connection with negotiations made with Marten related to the Contract, represented that TreCore had the ability and intent to comply with all of Defendants' obligations under the Contract, including using payments from Marten to pay Defendants' subcontractors.

20.     Marten relied on these statements by Defendants, including statements made by Melo and Pershall, in agreeing to enter the Contract and in making Contract payments to TreCore.

COMPLAINT                                                                                   Page 4

21.     Marten is informed and believes, and thereon alleges, that when Defendants, including Melo and Pershall, stated that they intended to comply with the Contract and to pay their subcontractors, that they in fact had no intent to pay their subcontractors and, to the contrary, intended to keep the proceeds of Marten's payments under the Contract for their own use.

22.     As a result of Defendants' false representations as described above, and Defendants' subsequent failure to pay their subcontractors, Marten has been damaged in an amount according to proof.

23.     Because Defendants have acted recklessly and intentionally and in wanton disregard of the harm that would occur when they falsely represented that they would use plaintiffs' funds in compliance with the Contract, they are liable for punitive damages in an amount to be determined at trial.

24.     Marten hereby demands a trial by jury on all claims so triable.

WHEREFORE, Marten prays for relief as follows:

1.     Actual damages according to proof;

2.     Punitive damages according to proof;

3.     An order providing that Defendants shall defend and indemnify Marten against all claims brought by Granite Construction and any other subcontractor that may make claims against the Project property;

4.     For costs and attorneys' fees as allowed by law; and

5.     For all other relief that the Court deems just and proper.

COMPLAINT                                                                                          Page 5

DATED: August 3, 2017

LARKINS VACURA KAYSER LLP

s/ Christopher J. Kayser
Christopher J. Kayser, OSB #984244
Larkins Vacura Kayser LLP
121 SW Morrison St Suite 700
Portland, OR  97204
Telephone:  503-542-3111
cjkayser@lvklaw.com
Attorney for Marten Transport Ltd

Donald Bradley (to be admitted *pro hac vice*)
D.Bradley@MPGLAW.com
William Bossen (to be admitted *pro hac vice*)
W.Bossen@MPGLAW.com
Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

*Trecore Construction Management*

**ARTICLE 1    THE CONTRACT DOCUMENTS** .
1.1 The Contractor shall complete the Work described in the Contract Documents for the Project. The Contract Documents consist of

.1      this Agreement signed by the Owner and Contractor;

.2      the drawings and specifications prepared by the Contractor, dated October 3, 2016, and enumerated as follows:

Drawings:

| Number | Title | Date |
|--------|-------|------|
| 1 of 1 | Google Earth Sketch | 10/3/16 |
| 1 of 1 | Phasing Layout | 10/3/16 |

**ARTICLE 2    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**
The number of calendar days available to the Contractor to substantially complete the Work is the Contract Time. The date of commencement of the Work shall be on or about April 3, 2017 unless otherwise indicated below.

Phase #1 - West Parking Area Approx 85,000 SF (Based upon 30 day work schedule) - Full Access Required
Phase #2 - East Parking Area Approx 47,000 SF (Based upon 30 day work schedule) - Full Access Required
Calendar subject to adjustment as provided in Article 9 and Article 10.

**ARTICLE 3   CONTRACT SUM**
3.1 Subject to additions and deductions in accordance with Article 9, the Contract Sum is:  **Seven Hundred Seventy Thousand Two Hundred Seventy-One Dollars and Seventeen cents** ($770,271.17).

3.2 For purposes of payment, the Contract Sum included the following values related to portions of the Work:

See ROM Proposal TRE #639

3.3 Allowances included in the Contract Sum, if any, are as follows:

Item  SDC FEES TO CITY OF WILSONVILLE ALLOWANCE                        0 . *

3.4 The Contract Sum shall include all items and services necessary for th Work.

*debora@trecoreconstruction.com*

520,852.13*
249,419.04*
770,271.17*

0 . *

770,271.17*
0.25=
192,567.79* —— 8000.
121300.3000

*send 1/3
deposit 1/4*

Exhibit A

## ARTICLE 4   PAYMENT

4.1 Based on Contractor's Applications for Payment, the Owner shall pay the Contractor, in accordance with Article 11, as follows:

*25% Down Payment*
Monthly progress billings thereafter per industry standard to be paid Net 30 or less from time of invoice

4.2 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate below, or in the absence thereof, at the legal rate prevailing at the place of the Project.

12%

## ARTICLE 5   INSURANCE

5.1 The Contractor shall provide the Contractor's general liability and other insurance as follows:

| Type of Insurance | Limit of Liability ($0.00) |
|---|---|
| General Liability | $1,000,000 each occurrence |
| Automobile Liability | $1,000,000 combined single limit |
| Workers Compensation | $1,000,000 EL each accident |

5.2 The Owner shall provide property insurance to cover the value of the Owner's property, including any Work provided under this Agreement. The Contractor is entitled to receive an increase in the Contract Sum equal to the insurance proceeds related to a loss for damage to the Work covered by the Owner's property insurance.

5.3 The Contractor shall obtain an endorsement to its general liability insurance policy to cover the Contractor's obligations under Section 8.12.

5.4 Each party shall provide certificates of insurance showing their respective coverages prior to commencement of the Work.

5.5 Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against (1) each other and any of their subcontractors, suppliers, agents and employees, each of the other; and (2) consultants and any of their agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.

## ARTICLE 6   GENERAL PROVISIONS

6.1 The Contract
The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreement, either written or oral. The Contract may be amended or modified only by a written modification in accordance with Article 10.

6.2 The Work
The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided, or to be provided, by the Contractor to fulfill the Contractor's obligations.

6.3 Intent
The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by owner shall be as binding as if required by all.

Exhibit A

**6.4 Ownership and Use of Drawings, Specifications and Other Documents**
Documents are prepared for use solely with respect to this Project. The Contractor, subcontractors, sub-subcontractors, and material or equipment suppliers are authorized to use and reproduce the instruments of service solely and exclusively for execution of the Work. The instruments of service may not be used for other Projects or for additions to this Project outside the scope of the Work without the specific written consent of the Contractor.

**ARTICLE 7   OWNER**
**7.1 Information and Services Required of the Owner**
**7.1.1** If the requested by the Contractor, the Owner shall furnish all necessary surveys and a legal description of the site.

**7.1.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, the Owner shall obtain and pay for other necessary approvals, easements, assessments and charges.

**7.2 Owner's Right to Stop the Work**
If the Contractor fails to correct Work which is not in accordance with the Contract Documents, the Owner may direct the Contractor in writing to stop the Work until the correction is made.

**7.3 Owner's Right to Carry Out the Work**
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies, correct such deficiencies. In such case, the Contract Sum shall be adjusted to deduct the cost of correction from payments due the Contractor.

**ARTICLE 8   CONTRACTOR**
**8.1 Review of Contract Documents and Field Conditions by Contractor**
**8.1.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**8.1.2** The Contractor shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner. Before commencing activities, the Contractor shall (1) take field measurements and verify field conditions; and (2) carefully compare this and other information known to the Contractor with the Contract Documents.

**8.2 Contractor's Construction Schedule**
The Contractor, shall prepare and submit for the Owner's information a Contractor's construction schedule for the Work.

**8.3 Supervision and Construction Procedures**
**8.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portion of the Work.

**8.4 Labor and Materials**
**8.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials equipment, tools, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work.

**8.4.2** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract Work. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

**8.5 Warranty**
The Contractor warrants to the Owner that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects

not inherent in the quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

**8.6 Taxes**
The Contractor shall pay sales, consumer, use and similar taxes that are legally required when the Contract is executed.

**8.7 Permits, Fees and Notices**
**8.7.1** All Required Permits responsibility of the Contractor.  The Contractor will coordinate inspections necessary for proper execution and completion of the Work.

**8.7.2** The Contractor shall comply with and give notices required by agencies having jurisdiction over the Work. If the Contractor performs Work knowing it to be contrary to applicable laws, statues, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs. The Contractor shall promptly notify the Architect in writing of any known inconsistencies in the Contract Documents with such governmental laws, rules and regulations.

**8.8 Submittals**
The Contractor shall promptly review, approve in writing and submit to the Owner Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents. Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

**8.9 Use of Site**
The Contractor shall confine operations at the site to areas permitted by law, ordinances permits, the Contract Documents and the Owner.

**8.10 Cutting and Patching**
The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**8.11 Cleaning Up**
The Contractor shall keep the premises and surrounding area free from accumulation of debris and trash related to the Work. At the completion of the Work, the Contractor shall remove its tools, construction equipment, machinery and surplus material; and shall properly dispose of waste materials.

**8.12 Indemnification**
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, consultants and agents and employees of any from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts the may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

**ARTICLE 09    CHANGES IN THE WORK**
**9.1** The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly in writing. If the Owner and Contractor can not agree to a change in the Contract Sum, the owner shall pay the Contractor its actual cost plus reasonable overhead and profit.

**9.2** If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be subject to equitable adjustment.

Exhibit A

ARTICLE 10   TIME

**10.1** Time limits stated in the Contract Documents are of the essence of the Contract.
Project Commencement may be accomplished earlier than noted above by both Contractor / Owner revision approval.
**10.2** If the Contractor is delayed at any time in progress of the Work by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, the Contract Time shall be subject to equitable adjustment.

ARTICLE 11    PAYMENTS AND COMPLETION

**11.1 Contract Sum**
The Contract Sum stated in the Agreement, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**11.2 Applications for Payment**
**11.2.1** The Contractor shall submit to the Owner an itemized Application for Payment for Work completed in accordance with the values stated in the Agreement. Such Application shall be supported by data substantiating the Contractor's right to payment as the Owner may reasonably require. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.

**11.2.2**
The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment, all Work for which Certificated for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

**11.3 Progress Payments**
**11.3.1** The Owner shall make payment in the manner provided in the Contract Documents.

**11.3.2** The Contractor shall promptly pay each subcontractor and supplier, upon receipt of payment from the Owner, an amount determined in accordance with the terms of the applicable subcontracts and purchase orders.

**11.3.3** The Owner shall not have responsibility for payments to a subcontractor or supplier.

**11.3.4** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the requirements of the Contract Documents.

**11.4 Substantial Completion**
**11.4.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work or its intended use.

ARTICLE 12   PROTECTION OF PERSONS AND PROPERTY
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with performance of the Contract. The Contractor shall take reasonably precautions to prevent damage, injury or loss to employees on the Work, the Work and materials and equipment to be incorporated therein, and other property at the site or adjacent thereto. The Contractor shall promptly remedy damage and loss to property caused in whole or in part by the Contractor, or by anyone for whose acts the Contractor may be liable.

ARTICLE 13   CORRECTION OF WORK
In addition to the Contractor's other obligations including warranties under the Contract, the Contractor shall, for a period of one year after Substantial Completion, correct work not conforming to the requirements of the Contract Documents.

Exhibit A

**ARTICLE 14    MISCELLANEOUS PROVISIONS**
**14.1 Assignment of Contract**
Neither party to the Contract shall assign the Contract as a whole without written consent of the other.

**14.2 Tests and Inspections**
**14.2.1** At the appropriate times, the Contractor shall arrange tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities.

**14.2.2** The Contractor shall bear cost of tests, inspections or approvals that do not become requirements until after the Contract is executed. Said costs applicable only to current project, and not Contractor responsibility until post Contract execution.
**14.3 Governing Law**
The Contract shall be governed by the law of the place where the Project is located.

This Agreement entered into as of the day and year first written above.

OWNER *(Signature)*

OWNER *(Signature)*

Steve Hale
*(Printed name)*

*(Printed name)*

Dec 7 2016
*(Date)*

*(Date)*

TréCore Construction Management, LLC
**(Signature)**

TréCore Construction Management, LLC
**(Signature)**

Nelson M Melo, President

Monté Pershall, Sr. Vice President

12/8/16
*(Date)*

12/8/16
*(Date)*

Exhibit A

PROPOSAL TRE#639
MARTEN TRUCKING
PARKING LOT REPAIRS



4510 NE 68th Drive, Suite 104
Vancouver, WA 98661
360-574-7661 Office
360-984-6637 Fax
trecoreconstruction.com

## PROPOSAL TRE#639

### MARTEN TRUCKING PARKING LOT REPAIRS

Client: **MARTEN TRUCKING LTD**
Attention: **WAYNE KAWSKI**
Project: **PROPOSAL TRE#639**
Location: **WILSONVILLE, OREGON**

| Proposed Scope of Work | PROPOSAL BASED UPON A REGULAR WORKING HOUR SCHEDULE | 10/5/2016 |
|---|---|---|

**PHASE #1 (WEST PARKING AREA APPROX. 85,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 56,000 SF OF FAILED AC / BASE.
* BACKFILL / COMPACT SUBGRADE AT NW CORNER OF PROPERTY TO OBTAIN ADDITIONAL PAVING AREA
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 300'x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 29,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 85,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

**PHASE #1 FUEL STATION ADDER OPTION:**
* RELOCATE EXISTING FUEL STATION APPROX. 80' WESTERLY.  (SEE ATTACHED SKETCH)
* RELOCATION TO INCLUDE:
1. RELOCATE ALL PLUMBING / ELECTRICAL AS REQUIRED FOR RELOCATED FUEL TANK / POLY TANK / STATION
2. NEW APPROX 90'x60'x12" THICK STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG
3. NEW TRENCH DRAINS WITHIN NEW SOG - UNDERGROUND PLUMBING TO TRAVEL TO EXISTING OIL/WATER SEPERATOR
4. NEW APPROX 90'x60'x16' CLEAR HEIGHT CANOPY OVER RELOCATED FUEL STATION
5. NEW LED LIGHTING BELOW NEW CANOPY
6. RELOCATE FUEL TANK ONTO NEW STRUCTURALLY REINFORCED FOUNDATION
7. RELOCATE POLY TANK ONTO NEW STRUCTURALLY REINFORECED FOUNDATION
8. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF FUELING STATION / FUEL TANK / POLY TANK
9. CLEAN / PREP / PAINT EXISTING FUEL TANK
10. CLEAN / PREP / PAINT NEW CANOPY, BOLLARDS AND ALL NEW COMPONENTS

**PHASE #1 SECURITY STATION ADDER OPTION:**
* PROVIDE / INSTALL NEW SECURITY STATION AT WESTERLY ENTRANCE
* SECURITY STATION TO INCLUDE:
1. SUPPLY / INSTALL ALL PLUMBING / ELECTRICAL AS REQUIRED FOR NEW SECURITY STATION / SECURITY GATE
2. NEW STRUCTURALLY REINFORCED FOUNDATION(S) AND SOG AT NEW SECURITY STATION LOCATION
3. SUPPLY / INSTALL NEW GAURD STATION SHACK
4. SUPPLY / INSTALL NEW RELOCATED SECURITY GATE ENTRANCE (SEE ATTACHED SKETCH)
5. NEW GATE OPERATORS / CONTROLS
6. STRUCTURAL BOLLARD PROTECTION AROUND PERIMETER OF SECURITY STATION AND OPERATOR PROTECTION
9. CLEAN / PREP / PAINT

**PHASE #2 (EAST PARKING AREA APPROX. 47,000 SF):**
* DEMO / REMOVE / DISPOSE OF EXISTING APPROX. 20,000 SF OF FAILED AC / BASE.
* FURNISH / INSTALL SUBGRADE FABRIC
* FURNISH / INSTALL APPROX. 20" BASE
* FURNISH / INSTALL APPROX. 6" (3/4"-) LEVELING AGGREGATE
* PLACE / FINISH APPROX. 3" FINISH THICKNESS BASE AC
* PREP / PLACE / FINISH 220'x6'x10" THICK STRUCTURALLY REINFORCED (UPPER / LOWER MAT) CONCRETE LANDING PAD
* PREP / WASH EXISTING SURFACES NOT REMOVED - INSTALL GLASS GRID FABRIC - APPROX. 27,000 SF AREA
* PLACE / FINISH APPROX 4" FINISH THICKNESS FINAL COURSE AC OVER ENTIRE APPROX. 47,000 SF AREA
* RESTRIPE IN ORDER TO OBTAIN ADDITIONAL PARKING STALLS (SEE ATTACHED SKETCH)

*PROUDLY SERVING:  WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING*

Exhibit A

*PROPOSAL TRE#639*
*MARTEN TRUCKING*
*PARKING LOT REPAIRS*

BELOW LINE ITEMS INCLUDES ALL APPLICABLE GENERAL CONDITIONS / PROJECT MANAGEMENT / ESTIMATING / ADMIN / SAFETY / SITE SUPERVISION / EQUIPMENT / MATERIAL / LABOR / TAXES / INSURANCE / ENGINEERING / ARCHITECTURE / PERMITTING (SDC FEES TO CITY OF WILSONVILLE ALLOWANCE WITHIN)/ SPECIAL INSPECTIONS

| | |
|---|---|
| PHASE #1 - WEST PARKING AREA APPROX 85,000 SF (BASED UPON 30 DAY WORK SCHEDULE) | $ 520,852.13 |
| PHASE #1 - FUEL STATION ADDER OPTION (BASED UPON AN ADDITIONAL 15 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 - PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 45 WORK DAYS) | $ 315,160.11 |
| PHASE #1 -SECURITY STATION ADDER OPTION (BASED UPON 30 DAY WORK SCHEDULE CONDUCTED DURING PHASE #1 - PHASE #1 OVERALL SCHEDULE WOULD NOW BE A TOTAL OF 60 WORK DAYS) | $ 280,226.00 |
| PHASE #2 - EAST PARKING AREA APPROX 47,000 SF (BASED UPON 20 DAY WORK SCHEDULE) | $ 249,419.04 |
| **TOTAL PROPOSED PROJECT COSTS** | **$ 1,365,657.28** |

TréCore Construction Management proposal promoted by:

**Nelson M. Melo**
President

**Monte' R. Pershall**
Sr. Vice President

**Craig H. Shartner**
Sr. Project Manager / Business Dev.

**Exclusions:**

Any Specifics Not Noted Within
Special Governmental, Enforcement Agency, or Administrative filings, or notifications. GC liability and or responsibility for unknown existing environmental, storm water, structural soils conditions and or substrate contamination. Costs of special and or specific excavation in handling or removal of existing materials is not assumed within this scope of work. TréCore Construction Management LLC will not assume unexpected potential environmental fines/citations regarding current and/or site soils and or structural conditions. Scope excludes unexpected subgrade and or structural SOG and or sanitary main line undermining existing compromised conditions.

**Included:**

All work to be completed in a professional workman like manner to a minimum of industry standards. Any alteration or deviation from the above specifications impacting schedule and/or costs impacts will be executed only upon (Senior directive) and/or approval by client(s) and appropriate authorized TreCore Senior management's representation. All scheduling deadlines are contingent to a provided safe and accessible jobsite environment with acceptable working conditions. Factors beyond GC's direct control not limited to weather and/or unforeseen conditions that may impact schedule, milestones and or final delivery date(s) along with overall preapproved budgeting. All work performed unless specifically noted is currently budgeted to be executed during normal industry daylight and weekly hours.  Proposed budget within may be market adjusted post 30 days of receipt and or date noted within.

**Disclaimer**

The General Contractor makes every reasonable effort to determine existing conditions prior to providing budgeting applicable to above scope of work proposed.  However, in the event that unforeseen conditions are discovered that may negatively impact proposed budgeting within, including but not limited to unexpected: buried debris, stone ledger, toxic waste, garbage, structural rubble, historical artifacts, etc. The General Contractor and or its Assignees, Representatives and or Trades and Vendors will notify our Client(s) and assumably request for a Change Order to be executed.  In the event in which the progress and/or project schedule milestones of the project is compromised due to unforeseen conditions, the General Contractor and or its Assignees will immediately notify (in writing) the Client(s) and assumably request  adjustment of overall project schedule and/or budgeting cost impacts and or job totals.

*PROUDLY SERVING:  WASHINGTON, OREGON, CALIFORNIA, MONTANA, COLORADO, ARIZONA, IDAHO, WYOMING*

Exhibit A



*Standard Form of Agreement Between Owner and Contractor*

AGREEMENT made as of the 7th day of November in the year 2016.

BETWEEN the Owner:
*(Name, legal status, address and other information)*

*Marten Transport, LTD.*
*29605 SW Kinsman Rd*
*Wilsonville OR 97070*

and the Contractor:
*(Name, legal status, address and other information)*

*TréCore Construction Management, LLC*
*4510 NE 68th Dr., Ste #104*
*Vancouver, WA 98661*

for the following Project:
*(Name, location and detailed description)*

*Marten Transport, LTD.*
*29605 SW Kinsman Rd*
*Wilsonville OR 97070*

The Owner and Contractor agree as follows.

Exhibit A

TABLE OF ARTICLES

1       THE CONTRACT DOCUMENTS

2       DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION DATE

3       CONTRACT SUM

4       PAYMENT

5       INSURANCE

6       GENERAL PROVISIONS

7       OWNER

8       CONTRACTOR

09      CHANGES IN THE WORK

10      TIME

11      PAYMENTS AND COMPLETION

12      PROTECTION OF PERSONS AND PROPERTY

13      CORRECTION OF WORK

14      MISCELLANEOUS PROVISIONS

Exhibit A

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
_____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 2  U.S. Government
  Defendant
- ☐ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **LABOR** | | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #  _____    AMOUNT  _____    APPLYING IFP  _____    JUDGE  _____    MAG. JUDGE  _____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.