**Below is the Order of the Court.**



_____
**Brian D. Lynch
U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>NELSON M. MELO and<br>SANDRA K. MELO,<br><br>Debtors. | Case No. 17-43644-BDL<br><br>**ORDER SUSTAINING OBJECTION BY MORGAN MELO TO<br>PROOF OF CLAIM NO. 4 OF<br>MARTEN TRANSPORT, LTD.** |

Morgan Melo, daughter of the debtors Nelson and Sandra Melo, has filed an Objection to Proof of Claim No. 4 (ECF No. 72) filed by Marten Transport, Ltd. Morgan is the defendant in an avoidance action asserted by the Chapter 7 Trustee in this case, and seems to have taken the strategy of defending that adversary by objecting to all the claims filed in her parents' bankruptcy, assuming if there are no claims to be administered the Trustee has no reason to recover from her.

Morgan objected to Marten Transport's claim on the grounds it does not allege a claim against her parents, but instead is the liability of their former company, TreCore Construction.[1]

Marten opposed the objection on two grounds. First, it contended that Morgan did not have standing to object to its proof of claim as she was not a party in interest as to the claim.

---

[1] TreCore and a related company filed their own chapter 7 bankruptcies as well. Case Nos. 17-43069 & 17-43070.

Second, it contended that the debt involved was caused by Nelson Melo's fraud and there was a basis to pierce the corporate veil to impose alter ego liability for TreCore's breach of contract.

The objection was first heard by the Court on April 2, 2019. The Court determined there were fact questions about both Morgan's standing as well as individual liability of the debtors and the matter was set for an evidentiary hearing. The evidentiary hearing was conducted on June 4, 2019. Morgan Melo appeared through her counsel John D. Nellor. Marten Transport appeared through its counsel Donald E. Bradley, *pro hac vice*. Closing arguments were made on June 6, 2019.

In accordance with Fed. R. Civ P. 52, made applicable by Fed. R. Bankr. P. 9014(c) and 7052, following are the Court's findings of fact and conclusions of law. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such and vice versa.

## **Facts**

The genesis of this dispute starts with Marten Transport's hiring of TreCore in December 2016 to repair and construct a parking lot for Marten's Wilsonville, Oregon site. The contract (Ex. C1) is between Marten and TreCore and provided for a price of $770,271. The contract provided that TreCore was to warrant all title to the work would pass to Marten at the time of payment for the work (Para. 11.2.2); that TreCore was to promptly pay each subcontractor and supplier upon receipt of payment from Marten (Para. 11.3.2); and that Marten was to have no obligation to pay any subcontractor or supplier (Para. 11.3.3). The contract also provided that it shall be governed by the law of the place where the project is located. The contract was signed by Nelson Melo, as president, and Monte Pershall, as senior vice president, on behalf of TreCore, and by a representative of Marten.

Marten paid TreCore a 25 percent down payment in December 2016 and then paid for the remainder of the construction cost on two invoices. TreCore emailed Marten on May 1, 2017 indicating the project was 76.6% complete. Nelson Melo was copied on the email. After receipt of the 76.6% email, Marten paid TreCore $397,459.92 on May 12, 2017. TreCore then emailed Marten again on May 12, 2017 indicating the project was "100% complete." Nelson Melo was again copied on this email. Marten contends these emails represent that not only progress of the construction but also payment of subcontractors was also "100% complete." Marten then paid TreCore the remaining amount of the contract price of $180,243.46 on May 26, 2017.

Marten received word from subcontractor Granite Construction Company in mid-June 2017 that TreCore had not paid Granite for any of its work, despite Granite sending TreCore invoices in April and May 2017. Marten had several communications with TreCore employees about Granite getting paid, although none of the communications were directly with Nelson Melo. Marten was told, in part through an email dictated by Nelson Melo, that TreCore intended to pay the Granite invoices but needed more time as TreCore was going through merger talks. In fact, Nelson Melo had been having merger discussions with acquaintances at Talents Construction since April 2017.

TreCore never paid Granite. Granite recorded a mechanic's lien against Marten's property in July 2017. To remove the lien, Marten was forced to pay Granite – despite having already paid TreCore for the work. Marten did not ask for or receive a Lien Waiver for the Wilsonville project.

Nelson Melo testified he was not the primary manager of the Marten project, and that at the time he was managing several other TreCore projects all over the Western states. He testified he was not aware of the accuracy of the "76.6%" and "100% complete" emails at the time they were sent and was not aware that TreCore had not paid Granite. Three Marten

employees testified that Nelson Melo was on the Marten site for a pre-construction meeting, and two other times during the project. None of Nelson Melo's conversations with these employees related to financial matters or payment of subcontractors but were instead about a few details of the project, along with general chit-chat topics unrelated to the businesses or the contract.

During 2017 TreCore faced financial issues due to several other projects. Nelson and Sandra Melo were also approached by a co-owner of TreCore, Monte Pershall, about making a loan to TreCore to assist it financially. Pershall was involved more with the financial side of TreCore's business. Sandra Melo arranged for Morgan Melo to make a $100,000 loan in early 2017. Morgan provided the money to the debtors, who deposited it in their personal accounts and then Sandra Melo wrote a check to TreCore to loan it the funds. No documents evidencing the loans were introduced; Nelson Melo alone testified about these arrangements. Marten neither impeached or disputed his testimony, nor did Marten offer contrary evidence about the circumstances of the loan.

As to Marten's claim that alter ego liability should apply to Nelson Melo for TreCore's breach of contract, the only testimony elicited was that Nelson and Sandra Melo, sometime before 2017, had assisted a former TreCore employee to obtain financing and equipment so that he could start his own metal fabricating business in Northern California. The Melos obtained some of the equipment themselves, which they sold or lease-optioned to the new business. In November 2017, Nelson Melo also provided some trailers for use by the metal fabrication business which he personally owned, and which may have been used by TreCore at other times. Nelson Melo testified that he personally owns some equipment and over the years has done side jobs with friends on a personal basis during that time, outside the purview of his various companies.

On August 3, 2017, Marten filed a lawsuit against TreCore, Nelson Melo and TreCore's other principal Pershall in federal district court in Oregon. TreCore filed for chapter 7 bankruptcy on August 15, 2017. The Melos filed this personal chapter 7 bankruptcy in late September 2017. Morgan Melo was scheduled as a creditor, on the debtors' Schedule F of unsecured debts, with an alleged debt owed of $200,400.[2]

The debtors' Chapter 7 Trustee commenced a fraudulent conveyance and/or preference action against Morgan Melo on September 4, 2018 (Ad. Proc. 18-4055). Morgan's attorney stated on the record that Morgan had asked the Trustee to object to the proofs of claim filed in the debtors' case that were related to TreCore debts, but the Trustee declined to file such objections. Marten did not dispute or impeach this contention and did not provide any contradictory testimony. Morgan filed objections to each of the proofs of claim filed in her parents' case in January 2019. Only Marten opposed its claim objection.

After the initial hearing on Morgan's objection to Marten Transport's claim and Marten's argument that Morgan did not have standing, Morgan filed two proofs of claim in the debtors' case on April 29, 2019. Both claims were filed after the bar date but have not been objected to. Claim No. 8 is for $106,811.51 and is based on the early 2017 loan. Claim No. 9 is for $25,743.36 and purports to be related to the terms of an agreement to purchase a manufactured home from Morgan that she had arranged to be installed on a construction site in California for debtors to reside in during a TreCore construction project.

## Legal Analysis

A.  Jurisdiction

The Court concludes that it has jurisdiction to hear this proof of claim objection. Bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); 28 U.S.C. § 157(b)(1). The

---

[2] Marten Transport was also scheduled in the Melos' schedules, but designated as contingent and unliquidated debt, based on contract litigation.

Court concludes this is core matter under 28 U.S.C. §157(b)(2)(A) (matters concerning administration of the estate), under §157(b)(2) (B)(allowance or disallowance of claims) (orders approving sales of property) and §157(b)(2)(O) (proceedings affecting adjustment of the debtor-creditor relationship).

### B. Standing to Bring Claim Objection

Under 11 U.S.C. §502(a) any "party in interest" may object to a filed proof of claim. The Bankruptcy Code does not define "party in interest," and who is a "party in interest" will depend on the particular purposes of the Bankruptcy Code section at issue. *In re Owen-Moore*, 435 B.R. 685, 690-91 (Bankr. S.D. Cal. 2010). The term has been considered "broad enough to include anyone whose financial interest may be affected by the outcome of a bankruptcy case." *In re Barnes*, 275 B.R. 889, 892-3 (Bankr. E.D. Cal. 2002). Here, Morgan Melo is both a scheduled creditor, and claimant, as well as a defendant in an avoidance action brought by the Chapter 7 trustee.

When it comes to general objections to claims in a chapter 7 case, under 11 U.S.C. §323, the trustee is representative of the estate and therefore the trustee is ordinarily the party in interest in best position to raise objections under Section 502(a) on behalf of the estate. *In re Dominelli*, 820 F. 2d. 313, 316-7 (9th Cir. 1987) ("the trustee, as representative of the estate, normally can represent each general creditor as effectively as the could the creditor itself.") However, he is not the only party in interest and a creditor can also be a party in interest as well. *Id.* at 316. And if there is a conflict of interest between a trustee and an individual creditor or if a trustee has refused to bring a claim objection, another creditor may do so. *See Id.; In re Bakke*, 243 B.R. 753, 756 (Bankr. D. Ariz. 1999); *In re Sun Ok Kim*, 89 B.R. 116, 118 (Bankr. D. Haw. 1987); *In re Ulz*, 401 B.R. 321, 327 (Bankr. N.D. Ill. 2009).

The undisputed testimony was that Morgan Melo is a creditor of the debtors. She loaned them money pre-petition that was not repaid. She was listed on the debtors' schedules

as a creditor. Marten attempted to argue that Morgan is not entitled to creditor status because she didn't initially file a claim, and when she did finally file one, it was submitted after the bar date and after the dispute with Marten had arisen. However, the timing of Morgan's proof of claim does not change the fact that she does have a right to file a proof of claim as a creditor holding a pre-petition claim based on right of payment. *See* 11 U.S.C. §501 (creditor can file proof of claim), §101(10) (creditor is holder of a pre-petition claim) and 101(5)(A) (claim is a right to payment). A late filed claim is still allowed to participate in a chapter 7 bankruptcy, it just is subordinate in distribution. 11 U.S.C. §726(a)(3). And under some circumstances, even disallowed claimants have been held to still have "party in interest" standing. *See, e.g., In re Torres Martinez*, 397 B.R. 158, 164 (B.A.P. 1st Cir. 2008) (claimant whose claim was disallowed still deemed party in interest for purposes of seeking dismissal under Sect. 1307(c)).

Morgan is financially impacted by the avoidance suit, which will likely cease if there are no claims to administer in the debtors' bankruptcy. This situation gives rise to a conflict between herself and the trustee as far as bringing general claim objections. Therefore, it is appropriate that as a creditor Morgan be allowed to file the objections to the claims filed in her parents' bankruptcy.

Even if Morgan was not a creditor of the debtors' bankruptcy estate, her status as a defendant in the avoidance adversary would give her party in interest status as well. *See In re Lundahl*, 307 B.R. 233, 240-241 (Bankr. D. Utah 2003) (status as adversary defendants sufficient to give party in interest standing to file motion to dismiss).

The Court previously held back from entering orders on any of Morgan's claim objections until her standing had been determined. Having now ruled that she does have standing to object to proofs of claim filed in her parents' bankruptcy, Morgan may now re-

submit her orders sustaining the other claim objections filed (ECF Nos. 70, 71, 73, 74) which were unopposed, and the Court will sign and enter those orders.

### C. Personal Liability of Debtors for TreCore's Breach of Contract

Having concluded that Morgan has standing to file the Objection to the Marten Transport Proof of Claim, the Court now turns to the substance of Morgan's objection that the claim alleged by Marten is not the liability of Nelson or Sandra Melo but is solely a corporate obligation of TreCore Construction.[3]

It is undisputed that Marten's contract for the parking lot project was between Marten and TreCore Construction. However, Marten posits two theories of liability for finding personal liability by Nelson Melo: that Nelson Melo was involved in defrauding Marten into paying its invoices in full, and that the corporate veil should be pierced to impose liability on Nelson Melo for TreCore's breach of contract because Nelson Melo treated TreCore as his alter ego.

1. *Choice of Law*

The Court first must consider which state's law should govern determination of the substantive issues. Choice of law issues in bankruptcy cases are governed by the federal choice of law rules. *Mandalay Resort Group v. Miller (In re Miller)*, 292 B.R. 409, 413 (B.A.P. 9th Cir. 2003). Federal choice of law rules follow the Restatement (Second) of Conflicts of Laws in determining which state's law to apply. *Id*.

As to Marten's fraud claim, Restatement (Second) Conflicts of Law Section 148(2) directs that if a plaintiff's action in reliance took place in a state other than where the false representations were made, the court will consider the contacts relevant to each state with a relationship to the issue, such as (a) the place where the plaintiff acted in reliance on the misrepresentation, (b) the place where the representations were received, (c) the place where

---

[3] Marten Transport also filed a proof of claim for the same damages in the TreCore Construction LLC case (17-43469), to which no objected was filed. Marten received a $179,000 distribution from the settlement of the TreCore estate.

the representations were made, (d) the domicil or place of business of the parties, (e) the place where the tangible thing of the transaction was situated, and (f) the place where any contractual performance was to be rendered, if the misrepresentation induced entry into a contract. Here, the alleged misrepresentations were the emails sent from TreCore employees to Marten employees in Wisconsin, who then relied in Wisconsin on the "76.6%" and "100%" representations to issue payments out of Wisconsin to TreCore, a Washington limited liability company. The Court concludes that Wisconsin law should govern Marten's fraud claim.

As to the alter ego claim to pierce the corporate veil, Restatement (Second) Conflicts of Law Section 307 directs that claims to impose corporate liability on shareholder should be determined by the law of the state of incorporation of the relevant corporate entity. As TreCore was a Washington LLC, the Court concludes that Washington law should govern the alter ego determination.

### 2. There is No Proof of Fraud

First, Marten posits that Nelson Melo defrauded Marten with the emails representing that the project was "76.6%" and "100% complete," when in fact the subcontractors had not been paid and that Nelson Melo knew TreCore was having financial issues at the time. Under Wisconsin law, to establish fraud a plaintiff must show: (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment. *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211 (Wisc. 2005).[4]

---

[4] This is similar to the Oregon requirements for a fraud claim: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its

The problem is, Marten has failed to show any one of these elements. The alleged "misrepresentations" were made in emails sent by other TreCore employees; Nelson Melo was just copied on the emails, was not involved in preparing them and there was no proof that he had knowledge of their truth or falsity at the time the emails were sent. Since he was not the one making the representations, there can be no intent by Nelson Melo to have Marten rely and then act upon those representations. Marten failed to present evidence of any representation by Nelson Melo to Marten at all during the hearing; nor did Marten show that the project was not, at the time of the emails, physically 76.6% and then 100% completed as to the actual construction work. The emails allegedly relied upon don't even address payment of the subcontractor, much less make a representation as to payment of the subs as much as Marten would like to argue they implicitly do. That is not a reasonable reading of the two emails. Marten had several people testify that Nelson Melo was seen on the project site up to three times, but Nelson Melo's mere presence on the site with later non-payment of the subcontractor simply doesn't add up to fraud.

At the time of the June 2017 email, which Nelson Melo did dictate to his assistant Amanda Morgan to send, Melo was in discussions for a merger for TreCore. And a statement that TreCore did hope to address the subcontractor is not a promise of payment that could rise to the level of fraud. Moreover, this email was sent *after* Marten made its final invoice payment, so the email cannot be the basis of an inducement to get Marten to pay. Marten has failed to make a case for fraud.

      3. *There is no Basis to Pierce the Corporate Veil and Find Alter Ego Liability.*

As to piercing the corporate veil to find that Nelson Melo treated TreCore as his alter ego, Marten similarly fails to make out its case. Under Washington law, "Where a private person so dominates and controls a corporation that such corporation is his alter ego, a court

---

truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078, 1080 (1976).

is justified in piercing the veil of the corporate entity and holding that the corporation and private person are one and the same." *Rapid Settlements, Ltd.'s Application for Approval of Transfer of Structured Settlement Payment Rights*, 166 Wash. App. 683, 692, 271 P. 3d 925, 930 (Wash. Ct. App. 2012) *citing Standard Fire Ins. Co. v. Blakeslee*, 54 Wash. App. 1, 5, 771 P. 2d 1172 (Wash. Ct. App. 1989).

Marten has not shown that Nelson Melo so dominated and controlled TreCore that it should be considered his alter ego and personal liability imposed. The testimony was that Melo was only a 60% owner at the time of the Marten project, and the project was managed by the other co-owner Pershall. Nelson Melo testified he was not very involved in the Marten project and he wasn't even aware the subcontractor had not been paid until Marten raised the issue. The evidence suggests that someone else directed TreCore to ignore the Granite invoices.

Marten argued that Nelson Melo was obviously aware of financial problems at TreCore, and Melo's testimony confirms that. Marten contends that Melo could not be "willfully ignorant" of the problems at TreCore and that provides a basis to pierce the veil. But the standard under Washington law is that the shareholder has to "dominate" and "control" the corporation. Melo was aware of financial troubles, but the evidence did not demonstrate that he controlled or dominated TreCore, treating it as his alter ego, and there was similarly no evidence that he dominated or controlled TreCore as to the Marten project. In fact, the evidence was to the contrary. Knowledge of financial difficulties, and ignorance of potentially bigger problems, does not create alter ego liability.

Marten also raised TreCore financing a modular home the Melos used personally, however it was actually Morgan Melo who financed the home for her parents to live in near a

TreCore construction site.[5]  Marten argued that the Morgan Melo loans did not follow corporate formalities.  However, the Morgan Melo loans were to Debtors personally, and Debtors then loaned the funds to TreCore, so there was no need for corporate formalities as far as the Morgan Melo loan.  And lastly, Marten pointed to Nelson Melo loaning out trailers.  However, the trailers at issue did not belong to TreCore, but were Nelson Melo's personally owned trailers he has used for a variety of purposes over time. There was no evidence of Nelson Melo was using TreCore property for his personal use.  The evidence did not support the claim that Nelson Melo treated TreCore as his alter ego.

## Conclusion

The Court concludes that Morgan Melo had standing to object to the Marten Transport proof of claim, and the other claims filed in her parents' bankruptcy as well.  Moreover, her objection is substantively well-taken as Marten Transport has failed to prove evidence for holding Nelson and Sandra Melo personally liable for the breach of contract by TreCore Construction.

Morgan may upload, through counsel, her order sustaining the objection to Marten Transport's proof of claim as well as her orders sustaining the other claims objections she filed.

/// End of Order ///

---

[5] This is the debt that gives rise to Morgan's Proof of Claim No. 9.